IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

   Plaintiff,

v.

MARK A. RICHARDSON (01),

   Defendant.

Case No.  17-40036-01-DDC

**MEMORANDUM AND ORDER**

  On April 7, 2017, Topeka Police Department Officers William Davenport and David Ibarra stopped Mark A. Richardson on suspicion that the van driven by Mr. Richardson was displaying an illegal license plate.  After Officer Ibarra saw a firearm next to Mr. Richardson, the officers asked Mr. Richardson to step out of the van.  Mr. Richardson did not comply immediately and the officers arrested him for interfering with a law enforcement officer.  Officer Ibarra searched Mr. Richardson's person and found a small bag purportedly containing methamphetamine.  Officer Davenport secured the firearm that Officer Ibarra had spotted; he also recovered a second firearm located next to the driver's seat.

  Mr. Richardson previously was convicted of four felonies:  Criminal Possession of a Firearm, Criminal Damage to Property, Aggravated Assault with a Deadly Weapon, and Unlawful Discharge of a Firearm.  Doc. 1 at 1.  These convictions prohibited him from possessing a firearm.  Based on evidence that officers had discovered pistols in Mr. Richardson's van, the grand jury indicted Mr. Richardson on one count of possession of a firearm in violation 18 U.S.C. §§ 922(g) and 924(a)(2).  *Id.* at 2.  On October 2, 2017, Mr. Richardson moved to

suppress the methamphetamine and the firearms that the officers had seized during the April 7 traffic stop. Doc. 16. The court held an evidentiary hearing on October 24, 2017. On November 21, the court asked the parties to supplement their briefing to address whether the plain view doctrine applied to the issues joined by Mr. Richardson's motion. The court has considered the parties' briefings and evidence, and now is prepared to rule. For reasons explained in this Order, the court denies Mr. Richardson's Motion to Suppress (Doc. 16).

## I.  Factual Background[1]

On April 7, 2017, around 6:00 p.m., Topeka Police Department Officers Ibarra and Davenport stopped a van driven by defendant Mark A. Richardson. The officers initiated the stop because the license plate on the van did not match the registration for that plate. The plate was registered to a Chevrolet Trailblazer but Mr. Richardson was driving a GMC Safari. Officer Davenport activated the squad car lights and briefly activated his siren. Ex. 1 (Davenport #6 at :30; Ibarra #2 at :56).[2] Mr. Richardson did not stop immediately; instead, he turned onto another street. Davenport #6 at :22. Officer Davenport again activated his siren and this time Mr. Richardson stopped. *Id.* at :42 to :44. Officer Ibarra saw Mr. Richardson moving around in the van and he testified that he believed Mr. Richardson was attempting to remove items from his person.

Officer Ibarra left his vehicle and walked to the passenger side of Mr. Richardson's van. Officer Davenport remained in the squad car and ordered Mr. Richardson to put his hands

---

[1]   The following facts are taken from the uncontroverted facts of the Motion to Suppress (Doc. 16), the Government's Response in Opposition to the Motion to Suppress (Doc. 24), the videos contained in Jointly Stipulated Exhibit 1, and the testimony (to the extent credible) by Officers Ibarra and Davenport during the motion hearing.

[2]   The CD admitted into evidence by the government as Exhibit 1 contains eight separate videos on it: Officer Davenport's body camera supplies six of the videos while Officer Ibarra's body camera supplies two. This exhibit identifies Officer Davenport's videos as "Davenport #1," "Davenport #2," and so on. It similarly labels Officer Ibarra's videos. When it references these videos, the court refers to the video designations on Exhibit 1 and the time stamps within those videos.

outside the van. Ibarra #2 at 1:17; Davenport #6 at :56. Mr. Richardson complied after Officer Davenport asked a second time. Davenport #6 at 1:06. Officer Davenport then approached Mr. Richardson's van on the driver's side. *Id.*

Officer Davenport explained to Mr. Richardson that they had stopped him because the license plate was not registered to the van. *Id.* at 1:20. Mr. Richardson acknowledged as much, but explained that he had just changed cars and had not yet transferred the registration for the license plate. *Id.* at 1:22 to 1:35. Officer Davenport asked for the title to the van and Mr. Richardson's identification. *Id.* at 1:47, 1:52. Mr. Richardson provided Officer Davenport with the title but could not produce his driver's license. *Id.* at 1:52 to 2:07.

Meanwhile, Officer Ibarra saw a black and silver handgun located next to Mr. Richardson inside the van. Ibarra #2 at 2:27. He alerted Officer Davenport about the gun. *Id.* at 2:36; Davenport #6 at 2:07. Officer Davenport ordered Mr. Richardson out of the vehicle. Davenport #6 at 2:10. Mr. Richardson started to unbuckle his seatbelt, *id.* at 2:13, but stopped when Officer Davenport returned the title papers inside the van. *Id.* at 2:16. Then, Mr. Richardson began jiggling the gear shifter and grabbed the steering wheel. *Id.* at 2:18 to 2:23. In response, Officer Davenport ordered Mr. Richardson to put the van in park. *Id.* at 2:21. Mr. Richardson failed to oblige, so Officer Davenport grabbed the shifter, put the van into park, and removed the keys from the van's ignition. *Id.* at 2:23 to 2:25. Officers Davenport and Ibarra ordered Mr. Richardson to get out of the van several times, but Mr. Richardson remained in the van, asking the officers what was going on. *Id.* at 2:26 to 2:45; Ibarra #2 at 2:58 to 3:17. Officer Davenport grabbed Mr. Richardson's wrist and manually assisted him out of the van. Davenport #6 at 2:45.

The officers placed handcuffs on Mr. Richardson and took him to their patrol car. *Id.* at 2:46 to 3:20. Officer Ibarra explained to Mr. Richardson that he had seen a firearm in the van on

the right side of the driver's seat. Ibarra #2 at 3:53. Then, Officer Ibarra searched Mr. Richardson's person while Officer Davenport secured the firearm. Meanwhile, Officer Davenport found a second firearm in the van located next to the first one he had spotted. He also found a hatchet in the van. Davenport #6 at 4:06 to 5:13. After Officer Davenport returned to the squad car with the firearms and the hatchet, Officer Ibarra found a small clear baggy on Mr. Richardson's person. It contained a white crystalline substance. Ibarra #2 at 6:30. It purportedly was methamphetamine.

The officers ran an Interstate Identification Index ("Triple I")[3] check on Mr. Richardson to determine if he had a felony conviction that would disqualify him from possessing a firearm. The Triple I initially reported that Mr. Richardson had no felonies. Davenport #6 at 11:02. But when back-up officers arrived and re-ran the Triple I, the officers discovered Mr. Richardson had prior felony convictions. Davenport #6 at 20:35.

On May 3, 2017, a grand jury returned an indictment charging Mr. Richardson with one count of unlawfully possessing a firearm and ammunition after being convicted of a felony. Mr. Richardson's motion challenges the officer's search of his person and his vehicle.

**II.     Analysis**

The Fourth Amendment[4] forbids unreasonable searches and seizures. *Bailey v. United States*, 568 U.S. 186, 192 (2013). "'[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*,

---

[3]     Triple I is "the cooperative federal-state system for the exchange of criminal history records . . . ." 28 C.F.R. § 20.3(m). It includes "serious and/or significant adult and juvenile offenses." *Id.* § 20.32(a).

[4]     "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV

556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). If the defendant challenges the reasonableness of a search or seizure, the government bears the burden to prove the reasonableness of that search or seizure by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 (1974); *United States v. Zubia-Melendez*, 263 F.3d 1155, 1160 (10th Cir. 2001). If the court determines the search or seizure violated the Constitution and the law enforcement activity was not objectively reasonable, the court, with a few exceptions, must suppress the fruits and instrumentalities of the search or seizure. *United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014).

Mr. Richardson argues that law enforcement officers unlawfully seized two guns and a small bag purportedly containing methamphetamine in violation of the Fourth Amendment. He asserts that the court should grant his Motion to Suppress for three reasons. First, the officers had no reasonable suspicion to conduct a *Terry* stop. Next, the officers performed an illegal search of Mr. Richardson's person. And last, the officers performed an illegal search of Mr. Richardson's van. The court addresses these arguments, in turn, below.

      **A.**     **Authority to Detain Mr. Richardson**

Mr. Richardson first argues that the officers had no basis to handcuff him because the officers merely were performing a *Terry* stop. The government responds that the officers handcuffed Mr. Richardson because they had probable cause to arrest him.

Police officers may detain a person temporarily without probable cause if they develop reasonable articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). A seizure must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20. "'[T]he use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative

detention and enter the realm of an arrest.'" *United States v. White*, 584 F.3d 935, 952 (10th Cir. 2009) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1115–16 (10th Cir. 2007)).

Here, Officers Davenport and Ibarra placed handcuffs on Mr. Richardson and thus their investigative detention unquestionably entered the arrest realm. But the officers lawfully could arrest Mr. Richardson if they had probable cause to believe that he committed a crime. *Id.* An officer has probable cause to arrest someone when a reasonable officer believes a person has committed or is committing an offense. *Mocek v. City of Albuquerque*, 813 F.3d 912, 925 (10th Cir. 2015) (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008)). Whether an officer subjectively believed "probable cause existed for detaining a criminal suspect is not dispositive." *Id.* (citing *United States v. Davis*, 197 F.3d 1048, 1051 (10th Cir. 1999)).

The government argues the officers had probable cause to arrest Mr. Richardson on four distinct offenses: (1) illegal display of a license plate, in violation of Kan. Stat. Ann. § 8-142; (2) failure to possess a driver's license when driving, a violation of Kan. Stat. Ann. § 8-244; (3) resisting or opposing an officer while the officer is performing his official duty, Kan. Stat. Ann. § 21-5904; and (4) failure to comply with police officer's orders, in violation of Topeka Mun. Code § 9.35.010.[5] The court addresses most of these alleged offenses, in the following sections, 1–3.

### 1. Illegal Display of a License Plate

Operating a vehicle without an accurate license plate is a misdemeanor offense under Kansas law. Kan. Stat. Ann. §§ 8-142, -149. Mr. Richardson admitted to Officer Davenport that the license plate on his van was registered to another vehicle. But Kansas law provides an

---

[5] Mr. Richardson asserts that Kansas preempts the Topeka obstruction law. Mr. Richardson argues that the Topeka ordinance conflicts with Kan. Stat. Ann. § 21-5904 because the Topeka ordinance confers more authority on police officers than does Kansas law. Doc. 25 at 10. Because the court finds that the officers had probable cause to arrest Mr. Richardson for violating § 21-5904, the court need not decide if the Topeka ordinance confers more authority than § 21-5904 confers on police officers.

exception to § 8-142 when the owner transfers ownership of a vehicle. When such a transfer occurs, the original owner can keep the license plate and register another vehicle under that license plate number. *Id.* § 8-135(a). The transferring owner legally can continue using the old license plate on the new vehicle for 60 days even if the county treasurer has not transferred the license plate registration. *Id.* § 8-135(b).

Here, a reasonable officer would not have probable cause to arrest Mr. Richardson for illegally displaying a license plate. Mr. Richardson explained that he had recently transferred vehicles. Mr. Richardson correctly identified the vehicle to which the county treasurer's records claimed the license plate belonged. And Mr. Richardson produced the title to the van and provided it to Officer Davenport. The officers possessed no information calling Mr. Richardson's explanations into doubt. After Mr. Richardson provided this information, Officer Davenport instructed Mr. Richardson to exit the vehicle. When Mr. Richardson stepped out of the van, Officer Davenport placed the handcuffs on him. At that point, the officers lacked probable cause to believe that Mr. Richardson was displaying an illegal plate. The officers thus could not arrest Mr. Richardson for illegal display of a license plate.

### 2. Failure to Possess a License When Driving

In Kansas, a driver must have his driver's license in his immediate possession whenever he operates a vehicle. *Id.* § 8-244. The driver also must produce his license whenever a law enforcement officer asks for it. *Id.* An officer can arrest a person for failing to produce his license. *See United States v. Meraz*, No. 10-40098-01/02-SAC, 2011 WL 1656459, at *6 (D. Kan. May 2, 2011) (holding that an officer could arrest a driver for failing to carry a driver's license with him); *see also United States v. Santana-Garcia*, 264 F.3d 1188, 1192 (10th Cir.

7

2001) (holding that officers could arrest a driver when the driver did not have a valid driver's license as Utah law requires).

Here, Mr. Richardson did not have his license with him while driving the van. And he did not produce it when Officer Davenport asked for it.

Mr. Richardson argues that *United States v. Lopez*, 849 F.3d 921 (10th Cir. 2017), controls this case. It does not. In *Lopez*, defendant handed the officer a California Department of Motor Vehicles receipt to prove she had a valid license. *Id.* at 929. The officer confirmed that the receipt was valid with his dispatcher. *Id.* The Tenth Circuit held that the officer could not arrest defendant once the he knew that she had a valid license because she had not violated Kan. Stat. Ann. § 8-244. *Id.* Here, in contrast, the officers received no information suggesting that Mr. Richardson had a valid license. They knew, however, that he did not produce a driver's license when asked. The officers thus had probable cause to arrest Mr. Richardson for failing to produce a valid driver's license as required by Kansas law.[6]

### 3. Interference with Law Enforcement Officer

To commit the offense of interfering with law enforcement, a defendant must (1) know an identified law enforcement officer is carrying out an official duty and (2) knowingly and willfully obstruct or oppose the officer. *State v. Brown*, 387 P.3d 835, 848 (Kan. 2017). A person can obstruct an officer by resisting or passively impeding an officer while the officer is carrying out an official duty. *Id.* at 849. Any such act, however, "'must have substantially hindered or increased the burden of the officer in carrying out his official duty.'" *Id.* (quoting

---

[6] Officer Davenport testified that he normally does not arrest a person for failing to produce a valid driver's license if he confirms through his dispatcher that the person has a valid license. This does not affect the court's analysis. An officer can arrest a person—even if an arrest differs from the officer's typical procedure—if probable cause exists. *See Virginia v. Moore*, 553 U.S. 164, 178 (2008) (holding that courts need not exclude evidence under the Fourth Amendment when an officer arrests someone for a crime that is not an arrestable offense under state law when the officer has probable cause that the person committed a crime).

*State v. Parker*, 690 P.2d 1353, 1362 (Kan. 1984)). Acts that cause officers to worry about safety substantially hinder an officer in carrying out his duties. *Id.* (holding that a jury could convict a defendant of interference with law enforcement when he hid in a "basement from officers who identified themselves and ordered him to come out" for five to 10 minutes because the defendant "created an immediate safety issue for both the officers and [the defendant]").

Here, both officers wore Topeka police uniforms and arrived in a marked patrol car. The officers both testified at the hearing that they were performing a traffic stop. And Officer Ibarra testified that when they saw the firearm next to Mr. Richardson, it made them nervous about their safety. Because Officer Ibarra was nervous about the gun, the officers asked Mr. Richardson to leave his vehicle. Mr. Richardson did not comply immediately; instead, he jiggled the gear shifter. At this point, the officers testified that they were unsure what Mr. Richardson might do next. Officer Davenport then reached inside and put the van in park. He also removed the key. Then, despite both officers ordering him to step outside the van, Mr. Richardson remained in the van. Mr. Richardson only left the van with some physical encouragement from Officer Davenport. While this conduct alone is not evidence of the most egregious kind of interference and, arguably, might not produce a conviction for interfering with a law enforcement officer, it is sufficient to establish that the officers had probable cause to believe that Mr. Richardson had interfered with a police officer.[7]

### B. Search Incident to Arrest

Because the officers lawfully arrested Mr. Richardson, they could perform a search incident to arrest. "Arresting officers, in order to prevent the arrestee from obtaining a weapon

---

[7] Because the court finds that probable cause existed to believe that Mr. Richardson interfered with a police officer under Kansas law, it does not decide if there was probable cause Mr. Richardson interfered with a police officer under the Topeka Municipal Code.

9

or destroying evidence, [can] search both 'the person arrested' and 'the area within his immediate control.'" *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2175 (2016) (quoting *Chimel v. California*, 395 U.S. 752, 754 (1969) (further citations and quotations omitted), ). Officer Ibarra had probable cause to arrest Mr. Richardson. *See supra*, Part II.A. He thus could search Mr. Richardson's person and seize any contraband found on him.[8]

### C. Vehicle Search

Mr. Richardson next argues that the officers searched his van illegally. The government disagrees. It asserts that the officers could search Mr. Richardson's van without a warrant for four reasons: (1) the officers were performing a vehicle search incident to arrest, (2) the automobile exception to the warrant requirement justified the search, (3) the officers were performing a protective sweep, and (4) a firearm was in plain view. The court addresses these four arguments below.

#### 1. Vehicle Search Incident to Arrest

First, the government argues that the officers could search the van as a search incident to arrest as allowed under *Arizona v. Gant*, 556 U.S. 332, 351 (2009). Police can search a vehicle incident to a recent occupant's arrest when (1) "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or (2) the officers reasonably believe "'evidence relevant to the crime of the arrest might be found in the vehicle.'" *Gant*, 556 U.S. at 343 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring)).

The government asserts that the second exception applies here. It argues that the officers reasonably believed evidence of Mr. Richardson's illegal display of a license plate was inside the

---

[8] The court recognizes that the government did not charge Mr. Richardson with possession of methamphetamine.

van. It contends such evidence includes the title or registration of the vehicle. But the officers did not have probable cause to believe that Mr. Richardson lacked title to the van. To the contrary, Mr. Richardson produced the van's title. And even if Mr. Richardson did not have his plate displayed legally, no further evidence of that crime would be in the van. The evidence supporting the illegal display of a plate is the license plate's presence on the wrong vehicle. Title and registration play no role in convicting someone of this offense.

Nor would officers reasonably believe that they might find evidence of the crimes for which they had probable cause to arrest Mr. Richardson—namely, driving without a license and interfering with a law enforcement officer. The van likely would not contain evidence of those crimes. The evidence required to convict someone for failing to produce a valid driver's license is the act of failing to produce a valid driver's license. *See id.* at 343 (holding that police officers could not search a vehicle incident to arrest because they did not have a reasonable basis to believe evidence of driving with a suspended license was in a vehicle). The evidence required to convict someone for interfering with police officers is interfering with a police officer. The officers lacked any reason to believe that they would not find further evidence of either of these crimes in the van.

### 2.     **Automobile Exception**

Second, the government argues that the officers reasonably searched the van because the officers could search the van without a warrant under the "automobile exception." The "automobile exception" to the Fourth Amendment's warrant requirement allows officers to search a vehicle without a warrant if the officers have "probable cause to believe that the vehicle contain[s] evidence of crime." *California v. Acevedo*, 500 U.S. 565, 569 (1991) (citing *Carroll v. United States*, 267 U.S. 132, 158–59 (1925)).

11

The government repeats the same argument it made to support a conclusion that *Gant* applies. That is, the government argues that the officers had reason to believe the van contained evidence that Mr. Richardson had displayed a license plate illegally. The court finds this argument unpersuasive because the officers did not have a reasoned belief that the van contained evidence of an illegally displayed license plate, as explained above. *See supra*, Part II.C.1.

The video of the traffic stop and the officers' testimony likewise do not establish they had reason to believe that the van contained evidence relevant to the crime of arrest. Neither officer testified to seeing any suspicious items in the van. While the officers may have had reasonable suspicions about the license plate, Mr. Richardson provided only plausible answers that were logical and preceded the officers' search of the van. *See United States v. Cooks*, 222 F. Supp. 3d 965, 971 (D. Kan. 2016) (finding that officers had no probable cause to search a vehicle when the defendant was unusually talkative and gave suspicious answers but did not give answers that were illogical or nonsensical when considering the facts known to the officer at the time of the search). The officers thus lacked probable cause to search Mr. Richardson's van.

### 3. Protective Sweep

Next, the government argues the officers lawfully could search the vehicle because they were conducting a protective sweep. Officers may conduct a protective sweep of a vehicle if the officers have a reasonable suspicion that "the suspect is dangerous *and* may gain immediate access to a weapon." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (emphasis added). *Long* recognizes that a suspect can gain immediate access to a weapon even though an officer has detained him. *Id.* at 1051. *Long*, however, discussed this principle in the context of a *Terry* stop. *See id.* at 1052. The government concedes that was not the case here. *Long* emphasized that "a *Terry* investigation . . . involves a police investigation 'at close range,' . . . when the officer

12

remains particularly vulnerable in part *because a full custodial arrest has not been effected . . . .*" *Id.* (emphasis added) (quoting *Terry v. Ohio*, 392 U.S. 1, 24 (1968)). *Long* particularly was concerned that a suspect would grab a weapon when he returned to the vehicle after the *Terry* stop had concluded. *Id.* Here, Mr. Richardson was in handcuffs and under arrest when Officer Davenport searched his van and Officer Ibarra performed a search incident to arrest. The officers thus had made a full custodial arrest and no longer had any need to conduct a protective sweep of the van as in *Long*.

### 4. Plain View

Last, the court considers whether the officers' seizure of the firearm was a lawful one under the plain view doctrine. The court concludes this doctrine provides justification for securing the firearms inside the van.

"If an officer is lawfully positioned in a place from which an object can be plainly viewed, the officer is permitted to notice whatever is put on display and the observation of the article is generally not considered a search." *United States v. Gordon*, 741 F.3d 64, 71 (10th Cir. 2014) (citing *Horton v. California*, 496 U.S. 128, 134 (1990)). Officers can seize an object only if the officer immediately identifies the plainly viewed object as contraband and the officer seizes the object in a place where the officer has a right to be. *Id.* But officers temporarily can seize an object that is not obviously contraband if the officers need to seize the object to protect their safety or the safety of others. *Id.*; *see also Coolidge v. New Hampshire*, 403 U.S. 443, 472 (1971) (plurality) (suggesting officers could seize objects that are inherently dangerous).

*Gordon* provides helpful guidance for this case. In *Gordon*, officers received a 911 call where the caller reported that her boyfriend—the defendant—had abused her two days earlier. *Gordon*, 741 F.3d at 68. The officers entered the couple's house—legally, according to the

13

Circuit—and saw a gun. *Id.* One of the officers grabbed the firearm. *Id.* But the officer did not know that the defendant was a felon when he grabbed the firearm. *Id.* at 72. After some investigation, the officers arrested the defendant for assault, locked the house, put him in a police car, and took him to the county jail. *Id.* at 68. The officer still had the firearm in his possession. *Id.* at 69. On their way to the jail, the officer learned the defendant had a prior felony conviction and thus was prohibited from possessing the weapon. *Id.* At that moment, the officer realized, the gun was contraband. *Id.* at 72.

The defendant moved to suppress the gun but the district court denied his motion. *Id.* at 69. On appeal, the defendant argued that the officers could not seize the gun under the plain view doctrine. *Id.* at 71. The Tenth Circuit agreed. *Id.* The Circuit concluded, however, that the officer reasonably seized the firearm while the officers and the victim were in the house because he needed to protect the victim and the officers. *Id.* But once the officers and the victim left the house, the officer should have returned the gun to the house. *Id.* at 72.

The Circuit, however, agreed with the district court's decision declining to suppress evidence of the firearm. *Id.* at 73. The Circuit observed, "Many courts have held [minimal] intrusions into a person's possessory interest in property, and even liberty interests, are not constitutionally unreasonable." *Id.* at 72 (citing *United States v. Jacobsen*, 466 U.S. 109, 126 (1984)). The Circuit applied this rule and found that the officer had intruded minimally on the defendant's possessory interest in the firearm. *Id.* at 73. It emphasized that the officer wrongfully detained the gun for a few minutes—beginning when he removed the firearm from the house until he realized the defendant was a felon and thus prohibited from possessing a gun. *Id.* And the Circuit added that the district court could have applied the inevitable discovery

doctrine[9] to admit the evidence because the officer could have secured a search warrant to seize the firearm had he returned the firearm to the house. *Id.* at 73–74.

Here, the court faces a similar situation. Officer Ibarra testified that he saw the gun while standing outside Mr. Richardson's van. Officer Ibarra has a right to view the interior of Mr. Richardson van while standing outside of it. *See United States v. Castorena-Jaime*, 117 F. Supp. 2d 1161, 1166 (D. Kan. 2000) (holding that an officer had a legal right to scan the interior of a vehicle while performing a traffic stop). While the officers could not conclude immediately that the gun next to Mr. Richardson was contraband, the officers could seize the firearm temporarily to protect their safety and the safety of others because the firearm was out in the open, in an unlocked van. *See United States v. Bishop*, 338 F.3d 623, 628 (6th Cir. 2003) (holding that an officer could seize a firearm in plain view in a vehicle because it posed an immediate danger to the officer and the public even though the officer lacked any other justification to search the vehicle). The officers seized the gun to prevent members of the public from finding the gun and taking it. It does not matter that the officers could not perform a search of the van incident to Mr. Richardson's arrest, or that they lacked probable cause to search the van, or that they could not perform a protective sweep of the van.

And even if the officers illegally seized the weapons, the officers minimally intruded on Mr. Richardson's possessory interest. The officers discovered the firearms in Mr. Richardson's possession represented contraband just 16 minutes after they had seized them. Like the illegal detention of the defendant's firearm in *Gordon*—which lasted a few minutes—the officers here minimally intruded on Mr. Richardson's possessory interest by illegally detaining the firearms

---

[9] The inevitable discovery doctrine allows a court to admit illegally obtained evidence when the officers ultimately or inevitably would have discovered it by lawful means. *United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014).

for 16 minutes. The court thus finds that the officers reasonably seized the firearms from Mr. Richardson's van and thus declines to suppress evidence of the firearms.

Mr. Richardson argues that the court should not apply *Gordon*. He offers two reasons why. First, Mr. Richardson asserts *Gordon* does not apply because Officers Davenport and Ibarra were in no danger and thus had no need to secure the firearm. According to Mr. Richardson's arguments, the officers were not in danger because Mr. Richardson was in handcuffs and could not access the firearms. But *Gordon* was not concerned solely with the prospect of the suspect gaining control of the weapon. *See Gordon*, 741 F.3d at 71. Instead, *Gordon* recognized that a firearm in the open could endanger the safety of the officers, regardless of who wielded it. *Id.* (citing *Bishop*, 338 F.3d at 628 (holding that an officer could reasonably believe that an unattended firearm posed a threat to public safety because an undetected passer-by could seize the firearm)). So while Mr. Richardson was secure and unable to gain access to the firearms, the officers had a reasonable belief that someone else might gain access to them.

The second reason Mr. Richardson argues that *Gordon* does not apply is that a minimal intrusion still requires the court to exclude the evidence. According to Mr. Richardson, the cases *Gordon* uses to justify admitting evidence seized when officers minimally intrude on a person's rights either have been abrogated by the Supreme Court or do not support extending that rationale to Mr. Richardson's situation. Neither argument is persuasive.

Mr. Richardson argues that *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), abrogated *United States v. Munoz*, 590 F.3d 916 (8th Cir. 2010), and *United States v. Farrior*, 535 F.3d 210 (4th Cir. 2008)—two cases that *Gordon* relies on to justify admitting evidence that officers seized after minimally intruding on a person's rights. Both cases involved traffic stops where the officer completed the purpose of the traffic stop yet still detained the suspects for just a few

16

minutes more. *Munoz*, 590 F.3d at 922; *Farrior*, 535 F.3d at 219. While the suspects still were detained, the officers found contraband. *Munoz*, 590 F.3d at 922; *Farrior*, 535 F.3d at 220. The Eighth and Fourth Circuits held that the impermissible detention did not require the court to exclude the evidence because it was a minimal intrusion on the suspects' liberty interest. *Munoz*, 590 F.3d at 922; *Farrior*, 535 F.3d at 220. The Supreme Court disagreed, holding that any detention past the time needed to conduct a traffic stop properly is an unconstitutional seizure that requires the court to exclude any evidence officers find while they are detaining the suspects unconstitutionally. *Rodriguez*, 135 S. Ct. at 1612.

But *Rodriguez* does not undercut *Gordon*'s rationale, particularly when applied to the facts in this case. The government in *Rodriguez* attempted to justify the officer's conduct by arguing the officer had a substantial interest in stopping crime, which outweighs the minimal constitutional intrusion. *Id.* at 1615. It analogized the case to *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (per curiam), where the Court held it was constitutional for an officer to order a person out of a vehicle when performing a traffic stop to protect officer safety because the weighty interest in officer safety outweighed the minimal intrusion on a person's liberty interest. *Rodriguez*, 135 S. Ct. at 1615 (citing *Mimms*, 434 U.S. at 110–11). But the Court also explained that a general interest in preventing crime is divorced from the main purpose of a traffic stop: to enforce the traffic laws. *Id.* at 1616. And officer safety "stems from the mission of the [traffic] stop itself." *Id.* So officers can burden a suspect's constitutional rights negligibly if the burden is connected to the purpose of the stop or to the need for officer safety during a traffic stop. *Id.*

In this case, the officers were performing investigative activities that created an inherent danger to their safety. Under *Rodriguez*'s logic, the officers justifiably can seize weapons in plain view while conducting an investigation, despite the negligible intrusion on a suspect's

17

constitutional rights because such an intrusion is minimal and stems from the purpose of the officer's activities. While *Rodriguez* abrogates *Munoz* and *Farrior*, it does not undercut *Gordon*'s reasoning to situations like the one present here.

Mr. Richardson also argues that *Gordon*'s "minimal intrusion" doctrine does not apply to these facts. According to Mr. Richardson, *Gordon* only considers officer conduct reasonable when the conduct minimally intrudes on a person's right. *See United States v. Jacobsen*, 466 U.S. 109, 125 (1984) (holding that the destruction of a small amount of white powder did not violate the Fourth Amendment because the officers reasonably seized the powder and the destruction of a small amount of the powder was a minimal intrusion on a property interest). Mr. Richardson argues that Officers Davenport and Ibarra's conduct was unreasonable because they seized the guns longer than needed to secure the scene. So, he contends, it does not matter that the officers intruded on Mr. Richardson's property interest only minimally. But the officers acted reasonably. As explained above, the officers seized the firearms because they reasonably believed that a firearm in plain view in an unlocked van placed their safety in danger. *See Bishop*, 338 F.3d at 628 (holding that an officer could seize a firearm in plain view in a vehicle because it posed an immediate danger to the officer and the public even though the officer lacked any other justification to search the vehicle). And while the officers could not detain the firearms permanently, their temporary seizure minimally interfered with Mr. Richardson's property interest. Because the officers minimally interfered with Mr. Richardson's property rights, their conduct was reasonable and the court need not suppress all evidence of the firearms. The court finds that *Gordon* controls the analysis and Mr. Richardson's arguments to the contrary are not persuasive.[10]

---

[10]    Because the court suppresses no evidence, the court does not address whether the good faith exception to the exclusion rule applies.

### III. Conclusion

For the reasons stated above, the court denies Mr. Richardson's Motion to Suppress (Doc. 16).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Mark A. Richardson's Motion to Suppress (Doc. 16) is denied.

**IT IS SO ORDERED.**

**Dated this 28th day of December, 2017, at Topeka, Kansas.**

                                  **s/ Daniel D. Crabtree_____**
                                  **Daniel D. Crabtree**
                                  **United States District Judge**